AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br>JESSE DANIEL ROSS, II<br><br>*Defendant(s)* | Case No.<br>1:23-mj-00459-MG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 25, 2023 and June 12, 2023  in the county of  Delaware  in the  Southern  District of  Indiana , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(vi) | Distribution of 40 Grams or More of Fentanyl |
| 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(vi) | Possession with Intent to Distribute 400 Grams or More of Fentanyl |
| 18 U.S.C. § 922(g)(1) | Unlawful Possession of a Firearm by a Convicted Felon |

This criminal complaint is based on these facts:

See attached Affidavit.

☒ Continued on the attached sheet.

/s/ Mike J. Nickens
*Complainant's signature*

TFO Mike J. Nickens, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  telephone  *(reliable electronic means)*

Date: 6/13/2023

City and state:  Indianapolis, Indiana

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Mike Nickens, being duly sworn under oath, state as follows:

## Affiant Background and Purpose of Affidavit

1. I am a Muncie Police Department Narcotics Investigator and a Task Force Officer (TFO) for the United States Department of Justice, Drug Enforcement Administration ("DEA"). I have been so employed with Muncie PD since October 2005, assigned to Narcotics since January 2012, and TFO since February 2022, assigned to DEA's Indianapolis District Office. As part of my training, I received sixteen weeks of training at Indiana Law Enforcement Academy in Plainfield Indiana. I have furthermore received specialized training in the investigation of basic telecommunications, exploitation and narcotic investigations. I have worked as a case agent and assisted other agents and officers in their investigations on cases involving violations of Title 21 of the United States Code, Section 841(a)(1) – Possession with Intent to Distribute and Distribution of Controlled Substances and Title 21, United States Code, Section 846 – Conspiracy to Possess with Intent to Distribute and Distribution of Controlled Substances. Specifically, those investigations have focused on the manufacture and distribution of methamphetamine, heroin, fentanyl, cocaine, and marijuana. I am familiar with, and participated in, all of the conventional investigative methods, including but not limited to, electronic surveillance, visual surveillance, questioning of witnesses, search warrants, confidential informants, pen registers, trap and trace, and the use of undercover agents. I have provided testimony before a Federal Grand Jury and testified in numerous state level dealing in controlled substance trials. Through my training and experience, I have become acquainted with the identification of various controlled substances.

I have also become acquainted with the various methods used by individuals to possess, transport, and sell controlled substances in violation of federal law.

2. I am an investigative or law enforcement officer of the United States within the meaning of section 2510(7) of Title 18, United States Code, in that I am an officer of the United States, empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. This affidavit is submitted in support of a criminal complaint charging Jesse Daniel ROSS II with Distribution of 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(B)(vi), Possession With Intent to Distribute 400 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(A)(vi), and Unlawful Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Section 922(g)(1).

4. The statements contained in this Affidavit are based in part on my direct involvement in this investigation; on my experience and background as a Task Force Officer with the DEA; on information provided by and conversations held with other law enforcement officers, including Special Agents/Task Force Officers of the DEA, officers of the Muncie, Indiana Police Department (MPD), other law enforcement officers, and others described below; and on a review of reports and database records. I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that are sufficient to establish probable cause for the issuance of the Complaint and associated arrest warrant.

## Facts and Circumstances

5.     On May 25th, 2023, DEA TFO Mike Nickens arranged for a Confidential Source (CS) to purchase 500 M30 fentanyl pills from Jesse Daniel ROSS II (ROSS) in exchange for previously photocopied U.S. currency that was supplied by the Muncie Delaware County Drug Task Force. ROSS is currently on probation in Delaware County, Indiana, after having been convicted of Dealing in a Narcotic Drug in cause number 18C01-2106-F2-000019. Your affiant knows ROSS currently is residing at 2612 S Tacoma, Muncie, Indiana with his mother. Additionally, ROSS indicated to the Delaware County Probation Office that he was residing at 2612 S. Tacoma in Muncie.

6.     Prior to the controlled purchase of fentanyl pills from ROSS, your affiant thoroughly searched the CS and their vehicle for controlled substances, weapons and US currency, and found none. Your affiant also fitted the CS with an electronic recording device, and gave the CS previously photocopied U.S. currency to make the purchase from ROSS.

7.     Law enforcement agents working with your affiant went to the area of 2612 S Tacoma, Muncie, Indiana to conduct surveillance on ROSS' residence prior to the CS arriving. Law enforcement maintained visual surveillance on the residence prior to and after the CS left ROSS' residence.

8.     A short time after meeting with your affiant, the CS went directly to the area of 2612 S Tacoma where they pulled up to the residence and parked in the driveway.

9.     A short time later, law enforcement saw ROSS pull up to 2612 S Tacoma in a Chrysler 300. ROSS and a juvenile were seen getting out of the Chrysler 300. The CS got out of their vehicle and walked to the south side of 2612 S Tacoma with ROSS and the juvenile.

10. Your affiant was monitoring live video with the electronic equipment that was provided to the CS. Your affiant observed the CS go inside ROSS' residence through a back door and later saw ROSS and the juvenile in the same room with the CS.

11. ROSS met with the CS and provided the CS with a clear bag containing numerous blue pills in exchange for $1,500 in U.S. currency. A short time later the CS walked out of ROSS' residence and left the area.

12. Law enforcement followed the CS directly back to a pre-determined meeting location where the CS turned over a clear bag that contained several round blue pills that were marked M30, and appeared to be pressed fentanyl pills. Your affiant counted the pills and determined ROSS only distributed 96 pills to the CS, rather than the previously agreed upon amount of 500 fentanyl pills.

13. Your affiant made the decision to have the CS go back to ROSS' residence to obtain the remainder of the pills. Another search was completed of the CS and their vehicle. No monies, weapons, or controlled substance was located during the search.

14. Law enforcement returned to the area of 2612 S Tacoma to conduct surveillance on the residence and saw the CS arrive and leave the residence. While inside ROSS' residence, ROSS distributed the balance of the previously agreed upon amount of fentanyl pills to the CS.

15. A short time later, law enforcement followed the CS directly back to the pre-determined meeting location where the CS turned over a clear bag that contained a large amount of round blue pills that were marked M30, and were consistent with being pressed fentanyl pills. The CS stated that ROSS thought they only wanted 100 pills. The CS stated that Ross checked the currency that was given to ROSS and observed that there was $1,500.00 for the 500 pills. The

CS stated that ROSS gave them 406 pills to make up for them having to come back and being short the first time.

16. The pills that ROSS distributed to the CS had a gross weight of 67.3 grams.

17. On June 12, 2023, a State of Indiana search warrant was executed on ROSS' residence located at 2612 S. Tacoma in Muncie, Indiana.

18. Located in ROSS' room of the residence were a large amount of blue M30 pressed fentanyl pills that weighed approximately 848 grams. The pills seized from ROSS' residence were similar in size and appearance to the pills that ROSS had distributed to the CS on May 25, 2023. Your affiant field tested one of the M30 pills and noted a positive result for the presence of fentanyl.

19. Also located with the fentanyl pills was over $12,000 in U.S. currency. Your affiant noted that some of the U.S. currency was the money given to ROSS by the CS to purchase fentanyl pills from ROSS on May 25, 2023.

20. In addition to the fentanyl pills and U.S. currency, a Glock 9 mm semiautomatic handgun and a Tec-9 semiautomatic handgun were found in the same room. Both firearms were loaded.

21. ROSS was given his *Miranda* warnings and he agreed to make a statement. ROSS stated that he was purchasing M30 pills for $1 each and that he would re-sell them for $2 each. ROSS stated that the big bag of pills in one of the safes belonged to "L" and that he was holding them for him. ROSS stated that only about 1,000 of the pills belonged to him. ROSS stated that he deals pills to 3 to 4 people a day. ROSS also admitted that he was aware of the two guns in his house. ROSS stated that he purchased the Glock for $550 and that he was holding the Tec-9 for another individual.

22. A criminal history check of ROSS revealed that on August 22, 2022, he was previously convicted of Dealing in a Narcotic Drug, a felony offense, in

Delaware County (Indiana) Circuit Court in cause number 18C01-2106-F2-000019.

23. Your affiant is aware that Glock and Tec-9 handguns are not manufactured in the State of Indiana. Therefore, the Glock 9 mm and Tec-9 handguns that ROSS possessed necessarily travelled within the stream of interstate of foreign commerce.

## Conclusion and Request

24. Based upon my training and experience and the facts set forth herein, I respectfully submit that there is probable cause to believe that, on May 25, 2023, in Muncie, Indiana, Jesse Daniel ROSS II, committed the offense of Distribution of 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vi), and on June 12, 2023, committed the offenses of Possession With Intent to Distribute 400 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) and Unlawful Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Section 922(g)(1). Accordingly, I request the Court issue a

criminal complaint, charging ROSS with these offenses and issue a warrant for his arrest.

                                                 s/Mike J. Nickens
                                                 Mike J. Nickens, TFO
                                                 Drug Enforcement
                                                 Administration

Sworn to before me by telephonic or other reliable means in accordance with Rules 41(d)(3) and 4.1 this 13 day of June, 2023.



Mario Garcia
United States Magistrate Judge
Southern District of Indiana